## ROSA AMATO *vs.* GEORGE C. ERSKINE, SUPERINTENDENT.

Third Judicial District, New Haven, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and WEBB, Js.

As between co-ordinate courts, a writ of *habeas corpus* will not be entertained while the court which first took jurisdiction still has power, upon the same representations, to discharge the prisoner; under such circumstances the jurisdiction of the original tribunal must first be exhausted.

The truth of the recitals of jurisdictional facts in the judgment of a court of general jurisdiction, cannot be attacked upon a writ of *habeas corpus* brought for the purpose of having such judgment declared a nullity.

The Superior Court, upon the trial of a minor accused of crime, has power to inquire and determine the age of the offender, and its determination thereof, recited in the judgment-file, cannot be retried upon *habeas corpus* proceedings, notwithstanding the theory advanced by the petitioner that such court was ousted of its jurisdiction under the Juvenile Court Act (Public Acts of 1921, Chap. 336) if the minor was in fact under the age of sixteen, as alleged.

Argued January 25th—decided March 1st, 1924.

HABEAS CORPUS to determine the legality of the imprisonment or detention of the plaintiff's son, less than sixteen years of age, in the Connecticut Reformatory at Cheshire, brought to and tried by the Superior Court in New Haven County, *Nickerson, J.;* facts found and judgment rendered for the plaintiff, ordering the discharge of her son from imprisonment, and appeal by the defendant. *Error and cause remanded.*

The petition for the writ alleged in general terms that the prisoner, a minor of fifteen years of age, was unlawfully confined in the Connecticut Reformatory. The respondent, as superintendent, made return that he held the prisoner by virtue of a mittimus of the

Superior Court, of which a copy was annexed to the return. The petitioner replied alleging that while a minor of the age of fifteen years Sam Amato was, on June 25th, 1923, arrested, and by the City Court of Derby bound over to the criminal term of the Superior Court; that on June 27th, 1923, the prisoner was presented to the Superior Court on information filed by the State's Attorney, and pleaded guilty to the offense of assault with intent to carnally know a female child under the age of sixteen years, and that the Superior Court found him to be eighteen years of age, whereas in fact he was but fifteen, and sentenced him to imprisonment in the Reformatory. It is alleged that neither the City Court nor the Superior Court had jurisdiction of the cause or of the person of Sam Amato, and that being a minor under the age of sixteen, he could not be prosecuted for or convicted of a crime. A demurrer to the reply was overruled and the respondent rejoined denying the allegations of the reply as to the prisoner's age. This issue was found for the petitioner, and the trial judge ordered the prisoner discharged, holding that the object of the Juvenile Court Act of 1921 was that a child under sixteen should not be tried for any act in violation of law by a criminal court; and that the petitioner could relitigate the issue of Sam Amato's age, though the judgment-file in that court recited that he was eighteen years of age.

The finding on appeal includes the records of the City and Superior courts, and finds that the criminal term of the Superior Court at which Sam Amato was convicted and sentenced had not been finally adjourned when this *habeas corpus* was heard and determined.

*Walter M. Pickett*, Assistant State's Attorney, for the appellant (defendant).

*Alfonse C. Fasano,* with whom was *Frank Crapanzano,* for the appellee (plaintiff).

BEACH, J.   Three of the reasons of appeal involve the following propositions: (1) that as between coordinate courts, the writ of *habeas corpus* will not be entertained while the court which first took jurisdiction still has power, upon the same representations, to discharge the prisoner; (2) that upon *habeas corpus* the truth of the recitals of jurisdictional facts in the judgment of a court of general jurisdiction, cannot be inquired into; (3) that the Juvenile Court Act of 1921, does not abolish the criminal jurisdiction of the Superior Court over persons under the age of sixteen years, so as to make the judgment and sentence in question a nullity.

The first and second propositions above outlined relate to the limitations necessarily inherent in *habeas corpus* proceedings, when the purpose of the writ is to have the court or judge hearing the cause declare the judgment of another court to be a nullity.

"It is a rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the subject-matter upon which it assumes to act, and regularly obtains jurisdiction of the person, it becomes its right and duty to determine every question which may arise in the cause, without interference from any other tribunal."   Hurd, Habeas Corpus (2d Ed.) p. 331, 332.

The rule above stated was applied to *habeas corpus* by the Supreme Court of the United States, in a case where that court was asked to issue the writ to obtain the release of the petitioner from the custody of the marshal of the Southern District of the Indian Territory who held him under sentence of death imposed by the territorial court of the United States.   The question

was whether the territorial court of the Indian Territory or the United States Court for the Eastern District of Texas, had jurisdiction to try the petitioner; and that depended upon whether the latter court had "acquired jurisdiction" of the petitioner before September 1st, 1896, the date upon which an Act of Congress conferred jurisdiction on the territorial court, except of cases over which the District Court had acquired jurisdiction before that date. Two warrants of arrest were issued, one by the territorial court, dated July 24th, 1896, and another dated July 25th, 1896, by the District Court. The territorial court first obtained custody of the petitioner, and afterward, but whether before or after September 1st did not appear, the marshal of the eastern district of Texas demanded the surrender of the prisoner, which was refused. The trial and conviction in the territorial court were after September 1st. The Supreme Court held that jurisdiction depended on service, and in the absence of proof of service by the marshal of the District Court, it applied the "settled doctrine of this court that a court having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction is exhausted, and that no other court has the right to interfere with such custody or possession," and denied the petition for the writ. *In re Johnson*, 167 U. S. 120, 125, 17 Sup. Ct. 735. In that case the rule was applied to courts of co-ordinate jurisdiction. Still closer in point is *State ex rel. Attorney General, Ex parte*, 150 Ala. 489, 43 So. 490, 10 L. R. A. (N. S.) 1129, in which the Supreme Court of Alabama issued a writ of prohibition restraining a judge from hearing and determining a writ of *habeas corpus* issued in behalf of one who was confined in jail under sentence of death, upon the alleged ground that the prisoner had become insane

since his conviction. The court held that the prisoner was still in the custody of the court before which he was tried and convicted, which had full power to stay execution and inquire into his sanity; citing *In re Johnson, supra,* and saying: "Any other rule would produce a conflict of jurisdiction over . . . the custody of . . . the condemned prisoner, and lead to inextricable confusion, resulting in a defeat of the due administration of justice."

In *Whitten* v. *Spiegel,* 67 Conn. 551, 35 Atl. 508, the petitioner had been indicted for murder, and was in the custody of the Superior Court pending trial. The ground of his application for discharge by writ of *habeas corpus* was that the indorsement "a true bill" on the indictment was a clerical error, and that the grand jury had in fact found the indictment not a true bill. The testimony of the foreman and other grand jurors to that effect was offered and excluded; we said: "If such a mistake, as is set up, was made, and if the prisoner has a right to ask for its correction, it is obvious that he should resort, first at least, to the court the verity of whose records is called in question." See also 29 Corpus Juris, 169, 170; 12 R. C. L. Habeas Corpus, § 59, and cases cited.

The rule above stated assumes, of course, that the court whose process is attacked had power to hear and determine the class of cases to which the particular case belongs; that the prisoner is in its custody, and that it still has control over its own process.

Those facts exist in this case, and whenever they exist it must follow, not only on grounds of comity, but of high public policy, and from the extraordinary character of the writ which presupposes that the prisoner has exhausted all the remedies open to him in the original forum, that a court or judge of co-ordinate jurisdiction ought not to summarily discharge the

prisoner from custody. If that can be done before the jurisdiction of the trial court has finally terminated, it can be done at any stage of the prosecution and would, in effect, authorize any judge having power to issue the writ of *habeas corpus,* to use it as a writ of prohibition against courts of equal, or even superior, co-ordinate jurisdiction.

We turn now to the question how far the recitals of fact in a judgment of a court of general jurisdiction, which is on its face valid, can be relitigated by or on behalf of the prisoner in *habeas corpus.*

The strict common-law rule, under which nothing but the outward form of the process could be examined, has been relaxed by statute in this State, as in most, if not all, of the States of the Union, and in the Federal jurisdiction.

The effect of our own statutes in this particular was examined and determined in *In re Bion,* 59 Conn. 372, 20 Atl. 662. On page 387 we said: "Where one is committed to jail pursuant to a judgment valid on its face, by a court having jurisdiction, and by virtue of legal process valid on its face, the attack on the judgment under a writ of *habeas corpus* must necessarily be collateral and subject to the rules restricting collateral attacks, and, if so, the validity and present force of the process are the only proper subjects for investigation under such a writ in such a case." The distinction is also noted between judgments and convictions which cannot be inquired into collaterally on *habeas corpus;* and writs, warrants, or other process before judgment, and it is said that there might be an issue of fact in case the writ was based on refusal to admit to bail. The petitioner's claim that he was tried before the wrong justice of the peace, was considered and overruled; his claim that the evidence did not warrant the judgment, was refused consideration on the ground above

stated and further because "the acceptance of such a principle as good law would open a very short but much traveled road, for the practical reversal of all judgments resulting in imprisonment, both as to matters of law and matters of fact." In *Whitten* v. *Spiegel*, 67 Conn. 551, 35 Atl. 508, the fact which was attempted to be litigated in *habeas corpus*, i. e. whether the grand jury had indicted the prisoner, went to the jurisdiction; but we said: "The records of that court, however, show that an indictment was duly agreed to and presented, and are, in this proceeding, conclusive evidence that the cause against him was fully within its jurisdiction."

Coming down to the particular case, the only basis for alleged want of jurisdiction is the allegation that the prisoner was less than sixteen years of age when the act was committed; and was therefore, on the petitioner's construction of the Juvenile Court Act, beyond the reach of criminal prosecution.

The Superior Court as a court of general criminal jurisdiction had power to try persons over sixteen years of age for the particular offense, and if its jurisdiction was limited by the Juvenile Court Act to persons over that age, it follows that, in the absence of any provision in the Act to the contrary, the Superior Court must have power to inquire into and determine the jurisdictional fact of age, as it did before the Act was passed. Independently of that Act, § 1838 made it necessary for the court to determine that the prisoner was between the ages of sixteen and twenty-five before it could commit him to the custody of the respondent. The fact was found and is recited in the judgment-file; and the attempt here is to relitigate the fact so found as a mode of attacking the judgment for want of jurisdiction. It is of no consequence that the accused pleaded guilty, or that he made no claim

to immunity on account of age, for the Superior Court has found the fact. Its jurisdiction does not rest upon "agreement, acquiescence, consent, estoppel or waiver," but upon the fact found and the recital of that fact in the judgment-file. *McDonald* v. *Hugo,* 93 Conn. 360, 105 Atl. 709, is not in point. In that case the fact of residence in Naugatuck, on which lack of jurisdiction was predicated, was admitted by the respondent's demurrer to the answer to the return. Here the allegation that the petitioner was immune because less than sixteen years of age, is denied, and the immediate question under discussion is whether, upon that issue of fact, the prisoner may contradict the recital of the judgment of conviction. It is clear upon principle and authority that he cannot do so on the mere assertion that the record is incorrect, and therefore inconclusive. 29 Corpus Juris, 169, 170; 12 R. C. L., Habeas Corpus, § 59; *Frank* v. *Mangum,* 237 U. S. 309, 331, 35 Sup. Ct. 285; *Ex parte Terry,* 128 U. S. 289, 305, 9 Sup. Ct. 77; *Ex parte Columbia George,* 144 Fed. 985, 986.

In *Ex parte Parnell* (Okl.), 200 Pac. Rep. 456, 460, the statute required the court to make a preliminary investigation of the probable guilt and of the capacity of the juvenile offender to commit the crime charged. The record showed that no such examination was made, and the lack of jurisdiction was apparent on its face. The other cases cited on the petitioner's brief are appeals directly attacking the judgment and are not in point. It is argued that the petitioner is not concluded by the recitals of fact contained in the judgment because she was not a party to the prosecution. The answer is that this proceeding is not *res inter alios.* The petitioner is acting on the prisoner's behalf. She has no independent right to have the conviction annulled. If the petitioner cannot question the recitals of the judgment, nobody can do it for her.

These conclusions dispose of the appeal, and we do not think it necessary or proper to determine the underlying question whether the Juvenile Court Act makes all juvenile offenders who are found to be under sixteen years of age incapable of committing a crime. It does not expressly say so; nor does it prescribe by what court the fact of age is to be determined. The question is so important and uncertain that it ought to be left until a case arises in which its determination is necessarily involved.

There is error and the cause is remanded with direction to set aside the judgment for the petitioner, and to remand the prisoner to the custody of the respondent.

In this opinion the other judges concurred.